## Buela, Appellant, *v.* Buela.

*Divorce—Desertion—Parties living apart by mutual consent.*

In an action for a divorce on the ground of desertion, a decree is properly refused, where it appears that the parties were living apart by mutual consent, and that neither the libellant nor the respondent made advances towards reconciliation.

Argued March 12, 1926. Appeal No. 16, March T., 1925, by libellant, from decree of C. P. Dauphin County, March T., 1922, No. 74, in the case of John Buela v. Mary Buela. Before PORTER, P. J., HENDER-

SON, TREXLER, KELLER, LINN, GAWTHROP and CUNNING-
HAM, JJ. Affirmed.

Libel in divorce. Before Fox, J.

The facts are stated in the opinion of the Superior
Court.

The case was referred to W. F. Housman, Esq., as
Master, who recommended that the libel be dismissed.
On exceptions to the Master's report the court over-
ruled the exceptions and dismissed the libel. Libellant
appealed.

*Errors assigned* were to the overruling of Libellant's
exceptions to the Master's report and the decree of the
court.

*George L. Reed,* for appellant.

*Carl B. Shelley,* and with him *Robert Stucker,* for
appellee.

OPINION BY CUNNINGHAM, J., July 8, 1926:

Appellant was the libellant in the court below in an
action for divorce on the ground of wilful and ma-
licious desertion upon the part of his wife. The re-
spondent filed an answer denying that she had deserted
libellant; asserting, on the contrary, that libellant had
deserted her and averring that she is and always has
been ready and willing to live with libellant in any
suitable home he may provide.

The case was referred to a master who, after taking
the testimony of the parties and their witnesses,
recommended that the libel be dismissed. The opinion
of the court, overruling the exceptions to the report of
the master, demonstrates that the court below faith-
fully complied with the opinions of this court in Rom-
mel v. Rommel, 87 Pa. Superior Ct. 511 and Stewart v.
Stewart, 88 Pa. Superior Ct. 1 by conscientiously

considering and reviewing all the testimony and upon such review and through the exercise of its own independent judgment as to the law and the facts reached the conclusion that the divorce sought should be refused.

Ten assignments of error were filed in this court but only the second and sixth require discussion on this appeal. By the sixth assignment it is charged that the court below erred in affirming the master's eighth finding of fact, which reads as follows:

"The respondent, Mary Buela, did not wilfully and maliciously desert her husband, John Buela, as in the said libel alleged, but she, the said Mary Buela, was ready and willing to at all times live and cohabit with him, her husband, the libellant."

In the second assignment it is averred that the court below erred in refusing to sustain the libellant's second exception to the master's original report, which exception averred that "the learned master should have found as a fact, and so concluded, that there was a bona fide offer by the libellant to provide a suitable home in accord with the law."

The parties were married May 15, 1919, but never established a home of their own. During the first few months after their marriage they lived with libellant's brother in the City of Harrisburg, and later with the respondent's parents in Steelton, Dauphin County, Pa., until December 24, 1919. On the evening of that day a dispute was occasioned when the respondent insisted upon going to mass against the protest of libellant who told her that if she went to church "he would go to sleep at Harrisburg," to which respondent replied "go ahead." Libellant left that night and has never since resumed marital relations with respondent.

It is admitted by the learned counsel for libellant that the separation which then occurred was a con-

sentable separation, but it is contended on behalf of libellant that this status was changed by the sending to respondent by libellant, under date of December 26, 1919, of a typewritten letter written for and at the instance of libellant, in which he asserted his affection for respondent and advised her that he had secured furnished rooms at No. 443 Walnut St., Harrisburg, and asked her to leave Steelton and come to Harrisburg to live with him. The parties to this proceeding are Italians but this letter was written in English by a man by the name of Sylva, a friend of the libellant, and who had at one time practiced law in San Francisco. Sylva testified that the libellant asked him to write the letter and, in reply to the question whether libellant had dictated the letter, said, "He did not dictate anything at all; he does not know what dictate means; he simply told me what he wanted to say and I wrote it my own way, my own style, and read it to him, and he said it suited him."

The location of the rooms referred to in the letter was inadvertently given as 443 Walnut Street; whereas, the house in which appellant had arranged for rooms was located at 321 Walnut Street. The respondent testified that she came to Harrisburg and, upon going to No. 443 Walnut Street, found that it was a private home and concluded that her husband was "fooling" her. On cross examination respondent was asked, "If you wanted to live with your husband, why did you not answer that letter," to which she replied, "I knew it was a fake.......I knew my husband too well to answer that letter."

The master and the court below were of opinion that the subsequent conduct of the libellant justified the conclusion that the letter referred to was not written in good faith.

On January 28, 1920, the Court of Quarter Sessions of Dauphin County made an order as the result of the institution of non-support proceedings against

libellant requiring him to pay respondent $6 per week. Efforts were made by libellant to have this non-support case settled but no sincere effort seems to have been made by libellant to provide a home for respondent or to induce her to live with him.

In the summer of 1920 respondent was required to go to the Harrisburg Hospital for an operation for appendicitis and, on July 11, 1920, a child was born to the parties at the hospital.

Although respondent was seriously ill, libellant made no effort to see her at the hospital except upon one occasion when he was refused admission, apparently by the hospital authorities, on account of the serious condition of his wife. Libellant contributed nothing toward the payment of respondent's expenses at the hospital, which were paid by her sister.

In the latter part of September, 1920, and upon several subsequent occasions, libellant went to the home of respondent's parents at Steelton to see his child but made no genuine effort toward a reconciliation with his wife or toward providing a home for her and their child.

We have not attempted to review the evidence in detail, and the facts to which we have referred are practically undisputed, but a thorough examination and consideration of all the evidence convinces us that the court below was fully justified in its conclusions.

This result follows from the application of established principles of law to the material facts in the case. In Neagley v. Neagley, 59 Pa. Superior Ct. 565, 571, RICE, P. J., quotes with approval from Ingersoll v. Ingersoll, 49 Pa. 249, the following definition of the ground for divorce asserted in this case: "Desertion is an actual abandonment of marital cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years. The guilty in-

tent is manifested when, without cause or consent, either party withdraws from the residence of the other."

After observing that this clear and concise definition has been approved in many later cases and has never been questioned, it is stated that, "The guilty intent to desert is rebutted where the separation is encouraged by the other party or [is] by mutual consent."

The status established by the parties at Steelton on December 24, 1919, namely, that of a consentable separation, remains until one or the other destroys that status and revokes the consent by making a bona fide offer to resume marital relations, which is refused: Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241.

Under the circumstances disclosed by the testimony in this case, it is clear that it was the libellant who left the home and it was his duty to make the first advances: Murray v. Murray, 80 Pa. Superior Ct. 575.

It is contended by counsel for libellant that he changed the status and performed his full duty by sending respondent the letter of December 26, 1919. This contention requires an investigation of the bona fides of the offer. A consideration of all the circumstances led the master and the court below to the conclusion that the offer was not made in sincerity and good faith and with a real desire that it should be accepted, but was intended rather to place the libellant in position to justify a repudiation of his legal obligation to support his wife and child.

As was further said in Murray v. Murray, supra, it was the duty of the libellant "to renew the offer, even if he thought it would be futile.......He could have gone further and rented a home and made it ready for her and then asked her to come and live with him, but he did nothing of the sort."

Our examination of the testimony leads us to the

same conclusion as that reached by the court below, namely, that neither the husband nor the wife in this case has made such advances toward a reconciliation as should be made and that the case is one in which the parties are living separate and apart by mutual consent or because of an improper understanding of their obligations toward each other. It is clear that there has been no such wilful and malicious desertion by respondent of libellant as would entitle him to a divorce.

The decree is affirmed.